1

1      IN THE UNITED STATES DISTRICT COURT
       FOR THE SOUTHERN DISTRICT OF GEORGIA
2                SAVANNAH DIVISION


3
UNITED STATES OF AMERICA,    )
4                            )
         Plaintiff,          )
5                            )
    vs.                      )    CASE NO. 4:17-CR-217
6                            )
HIPOLITO MARTINEZ-MARTINEZ, )
7                            )
         Defendant.          )
8    ---------------------------

9

10

11

12            TRANSCRIPT OF SENTENCING HEARING
      **BEFORE THE HONORABLE WILLIAM T. MOORE, JR.**
13            United States Courthouse
                 125 Bull Street
14                 Savannah, GA
                  June 11, 2018
15

16

17

18

19   COURT REPORTER:   Kelly McKee Dorsey, CCR, RMR, CCP
                       United States Court Reporter
20                     P. O. Box 8552
                       Savannah, GA  31412
21                     912-650-4065

22

23

24
       (Proceedings reported by mechanical stenography, transcript
25   produced by computer-aided transcription.)

1                    APPEARANCES OF COUNSEL

2    FOR THE UNITED STATES OF AMERICA:

3        Tania D. Groover, Esq.
         U.S. Attorney's Office - Savannah
4        P.O. Box 8970
         22  Barnard Street, Suite 300
5        Savannah, GA 31401
         912-201-2552
6        Fax: 912-652-4388
         Email: Tania.groover@usdoj.go
7
     FOR THE DEFENDANT:
8
         Amy Lee Copeland, Esq.
9        Amy Lee Copeland, LLC
         P.O. Box 23358
10       Savannah, GA 31403
         912-544-0910
11       Fax: 912-349-6097
         Email: ALC@roco.pro
12

13   INTERPRETER:

14       Willie Chavez

15

16

17

18

19

20

21

22

23

24

25

3

|  | 1 | **P R O C E E D I N G S** |
|--|--|--|
|  | 2 | **(3:00 p.m.)** |

14:59:30  3      THE COURT:  Good afternoon.  Call the first case,

14:59:32  4  please, Ms. Bodaford.

14:59:32  5      THE CLERK:  Yes, Your Honor.  The Court calls the case

14:59:35  6  of the *United States of America vs. Hipolito Martinez*, Case

14:59:40  7  Number CR 4:17-217.  Representing the government is Tania

14:59:43  8  Groover.  Representing the defendant is Amy Lee Copeland.  This

14:59:46  9  case is called for sentencing.

14:59:48  10      MS. GROOVER:  The government is ready to proceed, Your

14:59:51  11  Honor.

14:59:51  12      MS. COPELAND:  The defense is also ready, Your Honor.

14:59:54  13      THE COURT:  Ms. Bodaford, I believe we have Mr. Chavez

14:59:58  14  here as the interpreter.  Would you swear the interpreter,

15:00:01  15  please.

15:00:02  16      THE CLERK:  Yes, Your Honor.

15:00:03  17           (Interpreter sworn)

15:00:07  18      THE INTERPRETER:  I do.

15:00:15  19      THE COURT:  Mr. Martinez-Martinez, you appeared before

15:00:18  20  this Court on May 29, 2018, accompanied by your attorney,

15:00:23  21  Ms. Amy Lee Copeland, for a Rule 11 proceeding.  On that date,

15:00:29  22  pursuant to a plea agreement with the government, you pled

15:00:31  23  guilty and you were adjudged guilty of Count 1 of an indictment

15:00:38  24  charging you with possession of a firearm by a person illegally

15:00:43  25  or unlawfully in the United States, in violation of 18 United

4

15:00:50  1   States Code Section 922(g)(5).

15:00:53  2        Upon completion of the Rule 11 proceeding and the

15:00:55  3   Court's acceptance of the guilty plea, the Court directed the

15:00:58  4   United States Probation Office to conduct a presentence

15:01:02  5   investigation and upon completion to file a report and to

15:01:09  6   furnish that report to you and your counsel and counsel for the

15:01:13  7   government.

15:01:18  8        I ask you at this time, Mr. Martinez-Martinez, have you

15:01:21  9   had an opportunity to read and discuss the presentence report

15:01:24  10  and any addendum with your lawyer?

15:01:35  11       THE DEFENDANT:  Yes, sir.

15:01:36  12       THE COURT:  And do you or Ms. Copeland now have any

15:01:38  13  objections to either the factual accuracy of the report or to

15:01:40  14  the probation officer's application of the Sentencing

15:01:42  15  Guidelines?

15:01:48  16       THE DEFENDANT:  No, sir.

15:01:49  17       MS. COPELAND:  No, Your Honor.

15:01:50  18       THE COURT:  There being no objections to the factual

15:01:52  19  statements or to the probation officer's conclusions as to the

15:01:56  20  applicable Advisory Guidelines contained in the presentence

15:01:59  21  investigation report, the Court adopts those facts and

15:02:06  22  conclusions.  Accordingly, the Court determines that the

15:02:11  23  applicable Advisory Guidelines are a total offense of 19,

15:02:16  24  Criminal History Category I, 30 to 37 months of imprisonment,

15:02:20  25  one to three years of supervised release, a $10,000 to a

5

15:02:27  1    $100,000 fine, no restitution and a $100 special assessment.

15:02:33  2        Ms. Copeland, do you now wish to make any statement or

15:02:38  3    present any information in mitigation of sentence?

15:02:42  4        MS. COPELAND:  I do, Your Honor.

15:02:43  5        THE COURT:  Yes, ma'am.

15:02:44  6        MS. COPELAND:  Your Honor, I have no objections to the

15:02:46  7    guideline calculations, but I want to speak today about the

15:02:49  8    3553(a) factors.

15:02:51  9        This case arose from a state search warrant executed on

15:02:54 10    August 20th, 2017.  My client wasn't a target of the search

15:02:58 11    warrant and wasn't even named in the warrant's affidavit or the

15:03:02 12    warrant itself.  Instead, he lived on one of the four or five

15:03:05 13    trailers on a 26-acre parcel of land, which everyone refers to

15:03:09 14    as the farm.  He had an entirely different address than the one

15:03:12 15    in the search warrant.

15:03:14 16        Officers found four firearms in his room, including two

15:03:18 17    12-gauge shotguns and -- or, I'm sorry, a 12-gauge shotgun, a

15:03:22 18    20-gauge shotgun and a rifle, as well as an inoperable

15:03:26 19    semiautomatic pistol.  They also found a .45 in his car.

15:03:27 20        You may ask why were there so many guns.  Your Honor,

15:03:30 21    you'll notice that Mr. Martinez lived in a trailer on a farm in

15:03:33 22    Rincon, and he tells me coyotes would eat the chickens at the

15:03:37 23    farm.  I'll also mention here that the .22 pistol had a 32-round

15:03:42 24    magazine, but the pistol was inoperable due to missing pieces in

15:03:46 25    its firing pin components.

6

15:03:47  1          There is Eleventh Circuit case law saying that

15:03:50  2    inoperable firearms count as firearms nonetheless.  I will tell

15:03:53  3    you that; I want to be very up front about that.  But

15:03:56  4    Mr. Martinez got that firearm as a gift, saying you may or may

15:04:00  5    not be able to fix it, here it is.  This turned out to be quite

15:04:03  6    a gift because it drastically increased his sentence.  It upped

15:04:07  7    his base offense level to 20, and without this enhanced magazine

15:04:12  8    he would have been looking at a 12- to 18-month range.

15:04:15  9          As you know, Mr. Martinez is here today because of a

15:04:18  10   status crime, the fact that he's an illegal alien who possessed

15:04:21  11   firearms in the United States.  He pleaded guilty to that crime,

15:04:24  12   and as you'll see in the PSI, he's accepted responsibility.

15:04:27  13         I just want to tell you this afternoon a bit about his

15:04:30  14   time in America, a time that has spanned about 20 years.  He

15:04:33  15   came here to work.  Before his incarceration he worked seven

15:04:36  16   days a week, often from five in the morning till eight at night.

15:04:39  17   He started off in agricultural work in Florida picking

15:04:42  18   watermelon, cantaloupe and pumpkins.  He then worked

15:04:46  19   construction in Augusta fixing railroad tracks and doing asphalt

15:04:48  20   and concrete work.  I asked him to elaborate, and he told me

15:04:50  21   that that work included breaking concrete for sewer

15:04:53  22   installations and fixing sidewalks.

15:04:55  23         He recently moved, within the last few years, to

15:04:57  24   Savannah and worked for a tree service that subcontracted with

15:05:00  25   Georgia Power.  He's one of the people who cleans up after

7

15:05:03    1    storms, in addition to doing regular maintenance work.

15:05:06    2        Mr. Martinez's regular jobs usually had him working

15:05:09    3    Monday through Saturday, and when he wasn't working at his

15:05:12    4    regular job, which, again, took him about 15 hours a day, he

15:05:15    5    worked on Sundays in side jobs often doing landscaping.

15:05:18    6        I asked him, I said, Mr. Martinez, why did you work so

15:05:20    7    much?  He told me that that's why he came here.  He supports his

15:05:24    8    own four children, three of whom are American-born citizens and

15:05:29    9    one of whom is a DACA Dreamer.  He supports his mother, sister

15:05:33    10   and niece in Mexico, and with what's left over he supports

15:05:34    11   himself.

15:05:34    12       As you'll see, there's a translator here today, so I

15:05:37    13   asked Mr. Martinez why he never became fluent in English during

15:05:41    14   his time here.  He told me he speaks and understands some

15:05:44    15   English, although he's more comfortable with Spanish, and he

15:05:46    16   told me he always spoke enough English to do whatever job he was

15:05:49    17   doing.

15:05:50    18       I asked him why he never took classes to learn the

15:05:53    19   language, and he reminded me that he's been working 14 hours a

15:05:56    20   day for six days a week and doing side jobs on Sundays for the

15:05:59    21   last 20 years.

15:06:00    22       I then asked him, I said, you know, why didn't you

15:06:02    23   become a citizen?  You've been here a couple of decades, and

15:06:05    24   that would have prevented your arrest on this current crime, and

15:06:07    25   he told me that there were several reasons.  First, he believed

8

the easiest way would have been to marry an American woman.  He had a household, though, with a fellow illegal alien and they had children together.  He didn't want to tear asunder his family.  Second, he told me it cost a lot of money, and he had people to support both here and in Mexico.  A few years ago he saved $8,000 and paid a man who held himself out as an attorney.  The man said the $8,000 would pay for citizenship for himself, his partner at the time and his oldest son, whose school later helped him free of charge obtain DREAMer status.  The man took his $8,000 and did nothing for Mr. Martinez, and Mr. Martinez did not become a citizen.

Today, given the enhanced base level for a large-capacity magazine and the number of guns, he faces a total offense of 19 and a criminal history category of I.  He has prior convictions only for DUIs.  Now, there are three of them, in 2002, 2010 and 2013 and related traffic offenses.  He has no other convictions, no immigration offenses, just the three DUI convictions and related traffic offenses.

He is in the 30- to 37-month Guidelines range, and he's already served about 10 months in jail.  He will almost certainly be deported when his custodial sentence ends.  On his behalf I would ask today for a variance below the advisory range given these 3553(a) factors that I have set forth here.

Judge, I would suggest today the 12- to 18-month range that would have applied if someone hadn't given him the .22

9

15:07:36    1    pistol with the 32-round magazine.  Again, that pistol was

15:07:39    2    inoperable, and it just didn't work, but it did have a great

15:07:42    3    effect on his Guidelines range.  Thank you, Your Honor.

15:07:44    4         THE COURT:  Thank you, Ms. Copeland.  Does the

15:07:48    5    government wish to present any information as to the appropriate

15:07:51    6    sentence, Ms. Groover?

15:07:53    7         MS. GROOVER:  Thank you, Your Honor.  The government

15:07:54    8    believes that a guideline sentence would be appropriate in this

15:07:56    9    case.  Although the defendant does have a criminal history score

15:07:59   10    of zero, his criminal history began just three years after he

15:08:02   11    illegally entered this country.

15:08:04   12         In 2002 he got a DUI; in 2010, another DUI, more than

15:08:10   13    twice the legal limit; and again in 2013, his third DUI, again,

15:08:14   14    more than twice the legal limit.  Yet despite his extensive

15:08:18   15    drinking and driving problem, he's never enrolled in any kind of

15:08:22   16    substance abuse treatment for this.

15:08:25   17         And in this case law enforcement executed a search

15:08:28   18    warrant and attributed five firearms to him, and even though

15:08:31   19    only five were attributed, he had access to nine more that were

15:08:34   20    found on the property.

15:08:35   21         And, Your Honor, the government respectfully submits --

15:08:39   22         THE COURT:  Well, I know there were a lot of firearms

15:08:41   23    found on this property, but those -- all of those firearms

15:08:44   24    aren't attributable to Mr. Martinez.

15:08:46   25         MS. GROOVER:  That's correct.  There was only five that

10

15:08:49  1   were attributed to him.

15:08:49  2          THE COURT:  And one of them was an inoperable firearm.

15:08:52  3          MS. GROOVER:  Because it was missing a piece.

15:08:54  4          THE COURT:  Four were in the trailer, and one was in the

15:08:57  5   automobile.

15:08:58  6          MS. GROOVER:  That's correct.

15:08:59  7          THE COURT:  Okay.  Yeah, I don't know why -- maybe

15:09:03  8   Ms. Copeland can explain it to me.  You know, I've heard this

15:09:07  9   argument before, well, there were -- you know, I lived on a farm

15:09:11  10  and there were coyotes, and therefore, I needed all of these

15:09:15  11  firearms to protect.  But I don't know why a .45 in the vehicle

15:09:18  12  would be something that you'd go coyote hunting with, but maybe

15:09:22  13  Ms. Copeland can explain that to me.

15:09:24  14         MS. GROOVER:  Or why you need more than one gun for that

15:09:27  15  offense.  And so the government respectfully submits that given

15:09:30  16  his criminal history and the number of firearms, that a

15:09:32  17  guideline sentence would be appropriate in this case.

15:09:33  18         THE COURT:  Well, you talk about the criminal history.

15:09:56  19  And one of the -- you know, one of the things that always

15:10:00  20  astonishes me in these cases is time after time somebody like

15:10:03  21  Mr. Martinez will be arrested on a traffic offense, usually DUI.

15:10:10  22  He had one when he was 25, then eight years later -- and the

15:10:17  23  state did nothing.  They could have turned him over to the

15:10:22  24  Customs and Immigration at the time and he could have possibly

15:10:25  25  been deported.  Then eight years later he gets another traffic

11

15:10:30  1    offense.  Again, you know, the state -- he gets a suspended

15:10:35  2    sentence, just like he did the first time.  The state does

15:10:40  3    nothing about turning him over to Customs and Immigration

15:10:44  4    authorities.  Then three years later, in 2013, he gets another

15:10:50  5    DUI.  It's the same thing.  He served three days, and then he

15:10:57  6    got probation; and again, you know, this was in 2013.  And the

15:11:04  7    state authorities don't do anything about saying, well, he's a

15:11:09  8    bad person, he's illegal, he oughta be -- he oughta be deported.

15:11:16  9         But now, you know, I get the argument -- and I know I'm

15:11:21  10   talking to the federal government, not the state government now.

15:11:24  11   But now I get the argument that somehow he's a really, you know,

15:11:31  12   bad person because he's had these DUIs that took place over a

15:11:38  13   number of years.  And so as I look at his PSI and as I look at

15:11:48  14   his history, then I have to agree with what Ms. Copeland said,

15:11:53  15   that even though he's illegal, you know, he's apparently worked

15:11:59  16   pretty hard while he's been here and he hadn't had any -- you

15:12:02  17   know, he hadn't had any assaults.

15:12:04  18        You know, I get these cases all the time where they've

15:12:07  19   had assaults; you know, they've had domestic violence with their

15:12:13  20   wife or some woman that they're living with, or shoplifting or

15:12:18  21   various other things.  But as far as the PSI that I'm looking

15:12:21  22   at, I'm looking at a man who's here illegally, but has worked

15:12:26  23   hard and he can't quit drinking when he's driving.  Am I wrong

15:12:32  24   about that?

15:12:33  25        MS. GROOVER:  No, sir.  The government doesn't disagree

15:12:35  1    that he's a hard worker, but the fact remains that he's in this

15:12:40  2    country and needs to abide by our laws, and he just hasn't, and

15:12:44  3    he's illegally possessed five of those firearms.  And the

15:12:46  4    government respectfully submits that a guideline sentence would

15:12:49  5    be appropriate.

15:12:50  6         THE COURT:  Well, another thing that bothers me about

15:12:52  7    this case is I look at the PSI, and we look at the previous

15:12:55  8    history, and I saw where he worked for a number of years with

15:13:00  9    this company that was doing this railroad track work and other

15:13:05  10   work.  But then he goes over and he works for this tree removal

15:13:12  11   company -- and I've stated this before and I'll state it again.

15:13:37  12   Let me find it.

15:13:38  13        This company called Wolf Tree in Rincon.  Now, that's

15:13:44  14   just down the road over here.  You know, you can almost throw a

15:13:47  15   rock and hit Rincon from here.  Just down the road.  And he's

15:13:51  16   apparently worked with them from 1915 (sic) until his arrest in

15:13:59  17   this case.  And I guess they were paying him under the table,

15:14:03  18   $700 a week.  Because he didn't have any Social Security card,

15:14:09  19   apparently they weren't withholding anything from him.  And it

15:14:13  20   said -- but the PSI says Wolf Tree had no record of his

15:14:17  21   employment.

15:14:18  22        Well, sure, they had no record of his employment because

15:14:21  23   they're paying him under the table.  But nothing ever happens to

15:14:24  24   people like this that hire people like Mr. Martinez and then

15:14:32  25   enable him to stay here because he's got a job.  And I can't

13

15:14:38 1   understand why nobody can ever verify -- if he's working for

15:14:48 2   Wolf Tree -- you know, I don't know what goes on as far as

15:14:52 3   trying to verify employment in those things.  I don't know if

15:14:57 4   the probation office ever goes over to the person that owns Wolf

15:15:01 5   Tree and shows him his badge and say, hey, look here, I'm from

15:15:05 6   the federal government.  You've been hiring this man.  Show me

15:15:09 7   any records of him.  Or I don't know if any ICE officer goes

15:15:13 8   over there and shows them a badge to Mr. Wolf Tree and says,

15:15:17 9   look, I'm here from the federal government, I'm here to ask you

15:15:20 10  about Mr. Martinez so the Court can know about him.  Seems to

15:15:26 11  just -- you know, that that's not important, that the only

15:15:30 12  important thing is just, you know, send him off.

15:15:34 13        And unfortunately, people like Mr. Martinez -- and he

15:15:37 14  may fall in that category, I don't know.  Unfortunately, if he

15:15:42 15  is deported -- and he probably will be deported -- in a matter

15:15:45 16  of months they're coming back into the United States; they're

15:15:47 17  coming over the border in Texas or Arizona or they're coming in

15:15:51 18  from Florida or wherever they come from.  You see that.  I see

15:15:55 19  that.  The officers see that.  But I would like to get some

15:16:03 20  information, particularly from some of these employers.

15:16:09 21        You know, I've got a man, his name is Carlos.  He just a

15:16:13 22  couple of years ago got his citizenship.  He went through the

15:16:19 23  process.  He has a side job in addition to another job he has.

15:16:24 24  And he comes to my property and trims the palm trees on my

15:16:29 25  property and trims other trees on my property.  But I never paid

14

15:16:35  1   him a dime, and I never hired him until he could prove to me

15:16:40  2   that he was a United States citizen.  And why other people can't

15:16:47  3   do that is just beyond me.

15:16:52  4       So anyway, go ahead.  I'm sorry.  Anything else you want

15:16:57  5   to say?

15:16:58  6       MS. GROOVER:  We appreciate your -- the government

15:17:01  7   appreciates your points, Your Honor.  We will look into the

15:17:04  8   matter with respect to the employment issues, Your Honor.  But

15:17:06  9   those points aside, he still needs to follow the laws in this

15:17:10  10  country.  Thank you, Your Honor.

15:17:11  11      THE COURT:  Thank you.  Mr. Martinez-Martinez, the law

15:17:17  12  provides that you have the right to make any personal statement

15:17:21  13  to the Court before the imposition of sentence.  Is there any

15:17:23  14  personal statement that you wish to make or any additional

15:17:26  15  information that you wish the Court to consider in mitigation of

15:17:29  16  your sentence?

15:17:30  17      THE INTERPRETER:  He says, "I apologize to the Court, I

15:17:44  18  apologize to the people in government.  And I don't have any

15:17:47  19  more additional information.  And I apologize."

15:17:49  20      THE COURT:  I've listened to the defendant and to

15:17:55  21  defendant's counsel and to counsel for the government.  I've

15:17:57  22  reviewed the presentence investigation report.  I've also

15:18:00  23  considered the factors set forth in 18 United States Code

15:18:05  24  Section 3553(a).

15:18:07  25      Pursuant to the Sentencing Reform Act of 1984, it is the

15:18:10  1   judgment of the Court that the defendant, Mr. Martinez-Martinez,

15:18:15  2   is hereby committed to the custody of the Bureau of Prisons to

15:18:18  3   be imprisoned for a term of 24 months.  And upon release from

15:18:27  4   confinement the defendant shall be delivered to a duly

15:18:32  5   authorized Immigration and Customs Enforcement officer for

15:18:36  6   deportation proceedings.  It's recommended that the defendant be

15:18:41  7   given credit toward this federal sentence for all time served in

15:18:44  8   custody since August 20, 2017 that is not credited toward

15:18:49  9   another sentence.

15:18:50  10       The Court has granted a variance in this case based upon

15:18:55  11  the 3553 factors.  The Court has considered the nature and

15:19:01  12  circumstances of the offense, and the Court has considered the

15:19:05  13  history of this defendant, whose only prior criminal history

15:19:08  14  over all the years that he's been in the United States, which

15:19:10  15  have been way too many for someone who was illegal, of having

15:19:16  16  three DUI offenses for which he got a suspended sentence in

15:19:22  17  every case.

15:19:24  18       The Court has considered the seriousness of the offense,

15:19:29  19  and in the Court's opinion a 24-month sentence, under the

15:19:33  20  circumstances of this defendant, will provide just punishment

15:19:38  21  for the offense, and it will also adequately protect the public

15:19:42  22  from any future crimes of this defendant because when he is

15:19:46  23  released, he should be deported.  And that will protect, like I

15:19:57  24  said, from future crimes and is just punishment for this

15:20:02  25  offense.

15:20:02  1        The Court has taken into consideration the argument of

15:20:08  2   counsel that one of the firearms, the .22 pistol, was not

15:20:14  3   operable, even though it doesn't have to be operable, but it

15:20:20  4   was, in fact, not operable; and that .22 pistol increased his

15:20:26  5   Guidelines significantly.  And the Court has considered that

15:20:30  6   argument and the facts of that in the sentence in this case.

15:20:37  7        It's recommended that the defendant be evaluated by

15:20:43  8   Bureau of Prisons officials to establish his participation in an

15:20:46  9   appropriate program of substance abuse treatment and counseling

15:20:52  10  during his term of incarceration; and after considering the

15:20:54  11  factors set forth at United States Sentencing Guidelines Section

15:20:57  12  5E1.2(d), the Court has determined that the defendant does not

15:21:01  13  have the ability to pay a fine.  It's further ordered that the

15:21:06  14  defendant shall pay to the United States a special assessment of

15:21:08  15  $100, which shall be due immediately.  And pursuant to the plea

15:21:13  16  agreement, the defendant shall forfeit his interest in any

15:21:17  17  firearms and ammunition involved or used in the commission of

15:21:21  18  the offense.

15:21:22  19       Upon release from imprisonment, the defendant shall be

15:21:24  20  placed on supervised release for a term of three years, and

15:21:27  21  while on supervised release, the defendant shall comply with the

15:21:31  22  standard conditions of supervision adopted by this Court and the

15:21:35  23  mandatory conditions required by 18 United States Code Section

15:21:39  24  3583, which will include, but not be limited to, urine testing;

15:21:44  25  a prohibition against the possession of any firearm or other

17

15:21:50  1   dangerous weapon; and a prohibition against the violation of any

15:21:52  2   local, state or federal law.  And further, the defendant shall

15:21:56  3   cooperate in the collection of a DNA sample as directed by the

15:21:59  4   probation officer pursuant to 18 United States Code Section

15:22:04  5   3583.

15:22:04  6        While on supervised release, the defendant shall comply

15:22:07  7   with certain special conditions imposed by the Court, and the

15:22:12  8   Court has considered the factors set forth in 18 United States

15:22:16  9   Code Section 3553 and 3583 and the relevant policy statements

15:22:21  10  issued by the Sentencing Commission and has determined that

15:22:25  11  these special conditions involve no greater deprivation of

15:22:27  12  liberty than is reasonably necessary to achieve the purposes of

15:22:31  13  sentencing.  And the following special conditions are imposed:

15:22:34  14       If the defendant is ordered deported from the United

15:22:46  15  States, the defendant must remain outside of the United States

15:22:50  16  unless legally authorized to reenter.  And if the defendant

15:22:53  17  reenters the United States, the defendant must report to the

15:22:57  18  nearest probation office within 72 hours after the defendant

15:23:03  19  returns.  And if not deported, the defendant must report to the

15:23:07  20  nearest probation office within 72 hours of release from

15:23:11  21  custody.

15:23:11  22       The probation officer is hereby directed to provide the

15:23:14  23  defendant with a written statement which sets forth all the

15:23:17  24  conditions to which the term of supervised release is subject.

15:23:21  25       And the Court has accepted the plea agreement because

18

15:23:23  1    it's satisfied that the agreement adequately reflects the

15:23:26  2    seriousness of the actual offense behavior and that by accepting

15:23:29  3    the plea agreement it will not undermine the statutory purposes

15:23:31  4    of sentencing.

15:23:32  5            It is further ordered that defendant is remanded to the

15:23:40  6    custody of the United States Marshal.  The Court will recommend

15:23:43  7    to the Bureau of Prisons that this sentence be served at the

15:23:46  8    federal facility in Estill, South Carolina.

15:23:50  9            Mr. Martinez-Martinez, you're now advised it is your

15:23:54  10   right to appeal from this sentence within 14 days from this

15:23:57  11   date.  A failure to appeal within the 14-day period shall be a

15:24:01  12   waiver of your right of appeal, and the government may file an

15:24:04  13   appeal of this sentence.

15:24:05  14           You're also advised that you're entitled to the

15:24:07  15   assistance of counsel in taking an appeal, and if unable to

15:24:11  16   afford a lawyer, one will be provided for you; and if you so

15:24:14  17   request, the Clerk of Court will prepare and file a notice of

15:24:18  18   appeal on your behalf.

15:24:19  19           Ms. Copeland, you've been furnished with your notice of

15:24:24  20   your post-conviction obligation to consult with your client, and

15:24:28  21   you and your client are directed to execute the form and to

15:24:31  22   promptly file it with the Clerk of this Court.

15:24:33  23           Sentence has now been pronounced.  Do you have any

15:24:35  24   objections to the Court's findings of fact, conclusions of law

15:24:38  25   or the manner in which the sentence was pronounced?  Any from

19

15:24:41  1    the defendant, Ms. Copeland?

15:24:44  2            MS. COPELAND:  No, Your Honor.

15:24:45  3            THE COURT:  Any from the government, Ms. Groover?

15:24:47  4            MS. GROOVER:  No, Your Honor.

15:24:48  5            THE COURT:  If you'll let me know when everyone is ready

15:24:53  6    to proceed in the next case, I'll come out.

15:24:56  7                (Proceedings concluded at 3:24 p.m.)

          8                        - - -

          9

         10

         11

         12

         13

         14

         15

         16

         17

         18

         19

         20

         21

         22

         23

         24

         25

20

CERTIFICATE OF OFFICIAL REPORTER

1

2

3        I, Kelly McKee Dorsey, Registered Merit Reporter

4   and Certified Realtime Reporter, in and for the United States

5   District Court for the Southern District of Georgia, do hereby

6   certify that pursuant to Section 753, Title 28, United States

7   Code, that the foregoing is a true and correct transcript of

8   the stenographically reported proceedings held in the

9   above-entitled matter and that the transcript page format is in

10  conformance with the regulations of the Judicial Conference of

11  the United States.

12

13        Dated this 20th day of June, 2018.

14

15

16

17

18   /s/ *Kelly McKeeDorsey*

19   KELLY McKEE DORSEY, CCR, RMR, CCP

20   #2731